UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10767-GAO

OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL UNION OFFICERS' AND EMPLOYEES' PENSION FUND,
Derivatively on Behalf of State Street Corporation,
Plaintiff,

v.

JOSEPH L. HOOLEY, EDWARD J. RESCH, RONALD E. LOGUE, CHARLES R. LAMANTIA, KENNETT F. BURNES, ROBERT E. WEISSMAN, DAVID P. GRUBER, RICHARD P. SERGEL, LINDA A. HILL, GREGORY L. SUMME, RONALD L. SKATES, AMEILA C. FAWCETT, PETER COYM, PATRICK DE SAINT-AIGNAN, ROBERT S. KAPLAN, PAMELA D. GORMLEY, MAUREEN J. MISKOVIC, TENLEY E. ALBRIGHT, NADER F. DAREHSHORI, ARTHUR L. GOLDSTEIN, and DIANA CHAPMAN WALSH,
Defendants,

and

STATE STREET CORPORATION,
Nominal Defendant.

OPINION AND ORDER
September 30, 2013

O'TOOLE, D.J.

The plaintiff Fund, holder of shares of stock of State Street Corporation ("State Street"), has brought this derivative action against the individual named defendants, members of the State Street board of directors at relevant times, alleging breach of fiduciary duty, waste of corporate assets, and unjust enrichment. The provisions of the Massachusetts Business Corporation Act pertaining to derivative actions apply because State Street is a Massachusetts corporation. See Mass. Gen. Laws ch. 156D, §§ 7.40-7.47. The defendants have moved to dismiss the action pursuant to § 7.44 of that statute, as well as Federal Rule of Civil Procedure 12(b)(6).

**I.**   **Background**

In December 2009, a class action lawsuit was filed against State Street and certain of its officers alleging liability under federal securities laws. Subsequently two additional actions were brought, one alleging the same or similar securities law claims and the other alleging a substantially similar claim under the Employee Retirement Income Security Act ("ERISA"). The actions were consolidated and are currently pending before this Court. Hill v. State Street Corp., No. 09-12146-GAO. There is also a separate case pending in which similar ERISA claims are made. Kenney v. State Street Corp., No. 09-10750-DJC. The claims in those suits pertain in general to two sets of allegations: first, that the defendants failed to disclose material adverse financial information relating to the value of State Street's investment assets, including those assets held in off-balance-sheet conduits, and second, that the defendants failed to prevent misleading practices with respect to State Street's foreign exchange transactions. Some of the defendants in this case were added as defendants in the Hill case by subsequent amendment.

Between 2009 and 2011, three separate shareholders sent derivative action demand letters to State Street requesting investigation and prosecution of claims against officers and directors relating to the claims alleged in the securities and ERISA litigation. In response to each letter, the State Street board of directors appointed a special committee of independent directors to investigate the demands, assisted by outside, independent counsel. With respect to each demand, the committee recommended against pursuing the demanded litigation, and the board approved the recommendation.

The first such demand, by a shareholder named Lazar, demanded that State Street bring an action against certain officers and directors in response to the Kenney case. The board appointed a committee comprised of outside directors Kennett F. Burnes, Amelia C. Fawcett, and Robert S. Kaplan to investigate and make a recommendation to the board. The committee hired the law firm Simpson Thacher & Bartlett LLP ("Simpson Thacher") to assist with the investigation. Over the course of five months, the committee met nine times, interviewed State Street executives, reviewed thousands of documents, and analyzed management and decision making relating to the conduits. The committee concluded that it would not be in the best interest of State Street to pursue the demanded litigation and conveyed that conclusion as a recommendation to the board, which accepted it.

In September 2010, another shareholder, Himmel, demanded an investigation and initiation of litigation relating to the conduit, portfolio, and foreign exchange allegations in the Hill complaint. The directors appointed the same committee, who again retained Simpson Thacher as outside counsel. Over five months, the committee met seven times, conducted eleven interviews, reviewed thousands of documents, and analyzed pertinent public disclosures, all in investigation of the allegations made in the demand letter. Simpson Thacher also updated its prior investigation relating to conduits, conducted in response to the Lazar demand.

Again, the committee concluded that litigation would not be in the best interest of State Street and its shareholders. It relied on its analysis of management decisions concerning conduits and the investment portfolio from the Lazar demand and additionally concluded that "no State Street individual personally benefited from the Company's rational and standardized process" for the pricing of foreign exchange transactions. (Defs.' Mem. in Supp. of Mot. to Dismiss at 7 (dkt. no. 15).) The committee found no evidence of a scheme to overcharge clients for foreign

exchange transactions and no defendants to target or meritorious claims to assert. The committee concluded that seeking to impose liability for good faith business decisions would discourage the risk taking necessary to yield future returns for shareholders. Based on the committee's recommendation, the directors voted not to initiate litigation.

After the board had rejected their demands, neither Lazar nor Himmel took any further action. However, on October 13, 2011, the same counsel who had represented Himmel sent a demand letter to State Street on behalf of the plaintiff in this case. The demand letter is substantially similar to the Himmel demand. Specifically, the plaintiff demanded suit against State Street officers and directors based on the foreign exchange, conduit, and asset portfolio allegations stated in the Hill complaint.

The directors appointed the same committee, who again retained Simpson Thacher. The committee met six times and reviewed the essentially the same evidence that it investigated in response to the Himmel demand, since the two demand letters were virtually identical, except that the Fund's demand noted that the Hill complaint had, after rejection of the Himmel demand, survived a motion to dismiss for failure to state a claim. Neither the committee nor the board regarded that additional development as significant enough to warrant a different conclusion, and again the directors unanimously agreed that litigation was not in the best interest of the company or the shareholders.[1]

The Fund thereupon filed this case, purporting to act on behalf of the corporation and alleging that the directors all had breached their fiduciary duty to the corporation by failing to adequately supervise State Street's foreign exchange business and investment assets, particularly mortgage backed securities.

---

[1] The board's vote was unanimous. The only director who was not an outsider, Joseph L. Hooley, recused himself from participation in the consideration of the committee's recommendation.

**II.     Discussion**

As noted earlier, the defendants have moved to dismiss this action pursuant to Mass. Gen. Laws ch. 156D, § 7.44, which provides that a derivative action "shall be dismissed on motion by the corporation" if a majority of independent directors have "determined in good faith after conducting a reasonable inquiry . . . that the maintenance of the derivative proceeding is not in the best interests of the corporation." M.G.L. ch. 156D, § 7.44(a)(1). If a corporation moves to dismiss a derivative suit, "it shall make a written filing with the court setting forth facts to show (1) whether a majority of the board of directors was independent at the time of determination by the independent directors and (2) that the independent directors made the determination in good faith after conducting a reasonable inquiry upon which their conclusions are based." Id., § 7.44(d). The defendants have submitted the declarations of Kennett F. Burnes, who served as chair of the special committee that conducted the investigation in response to the Fund's demand, and Paul C. Curnin, Esq. of Simpson Thacher, who served as counsel to the special committee. A court is to "accept this information unless it is rebutted with particularity by the plaintiff." Id., § 7.44 cmt. 3. A court "shall dismiss the suit unless the plaintiff has alleged with particular facts rebutting the corporation's filing in its complaint, or an amended complaint or in a written filing with the court." Id., § 7.44(d). Here, the plaintiff relies on its complaint to rebut the defendants' filing.

   A.     Independence

A director is "independent" within the meaning of § 7.44 if he is "disinterested" "in the sense of not having a personal interest in the transaction being challenged" and "independent"

5

"in the sense of not being influenced in favor of the defendants by reason of personal or other relationships." Id., § 7.44 cmt. 1. The plaintiff challenges the directors' independence in the former sense, but not the latter. The directors cannot be considered "disinterested," the plaintiff says, because they themselves are accused in this case of breaching their fiduciary duty of loyalty to the corporation.[2]

The statute further provides that a director will not be found to lack independence simply because of "(1) the nomination or election of the director by a person who is a defendant in the derivative proceeding or against whom action is demanded; (2) the naming of the director as defendant in the derivative proceeding or as a person against whom an action is demanded; (3) the approval by the director of the act being challenged in the derivative proceeding or demand if the act resulted in no personal benefit to the director." Id., § 7.44(c)(1)-(3). "A presumption of propriety must be the starting point in the absence of clear allegations to the contrary." In re Sonus Networks, Inc. Derivative Litigation, 2004 WL 2341395, at *4 (Mass. Super. Ct. Sept. 27, 2004) (citing Aronson v. Lewis, 473 A.2d 805, 812, 815 (Del. 1984)).

The defendants assert that the directors were independent in the relevant sense when they acted on the Fund's demand and therefore the present action should be dismissed. None of the twelve outside directors had ever been employed by State Street or any of its subsidiaries nor had any business dealings with State Street. As part of the investigation, Simpson Thacher prepared a questionnaire which was completed by each director. The questionnaire was designed to identify any potential lack of independence with respect to the specifics of the plaintiff's demand by reference to both State Street's corporate governance guidelines and the guidelines in the New York Stock Exchange's listing requirements. The questionnaires revealed no compromise of

---

[2] The directors are exculpated under the corporate charter for any breach of their duty of care. The plaintiff does not contend otherwise.

independence based on those standards. (Curnin Decl., Ex. 8 at 5-6 (dkt. no. 15-8).) Cf. Pinchuck v. State Street Corp., 2011 WL 477315 at *12 (Mass. Super. Ct. Jan. 19, 2011) (weighing use of questionnaires in determining board independence).

As noted above, the directors are not to be considered *not* independent simply because they are named as defendants in this case or because they approved an act being challenged in this case. Mass. Gen. Laws ch. 156D, § 7.44 (c)(2), (3); Pinchuck, 2011 WL 477315 at *11. The plaintiff argues that the directors were not independent because ten directors who voted to deny the demand are also named as defendants in the Hill action, including two of the special committee members. It further asserts that the Hill claims have, since the rejection of the Himmel demand, received some validation because a motion to dismiss those claims was denied. Finally, the plaintiff argues that the directors were not independent because the demand was that they sue themselves for breach of their fiduciary duties as directors, as the derivative complaint now alleges.

There is not much Massachusetts case law interpreting § 7.44 or addressing directors' independence, and in addition to considering the limited local decisional law, Massachusetts courts have looked to the decisions of courts in other states (frequently Delaware since many corporations are chartered there) that address similar issues. See, e.g., Pinchuck, 2011 WL 477315, at *11 (citing Aronson, 473 A.2d at 812-16). The decisions of the various jurisdictions are generally in harmony.

There seems to be consensus that a "mere threat" of personal liability "is insufficient to challenge either the independence or disinterestedness of directors." Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984). Rather, there must be shown a "substantial likelihood" of liability in order to conclude that a director's otherwise apparent independence is compromised. Caviness v.

7

Evans, 229 F.R.D. 354, 359 (D. Mass. 2005) (quoting Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993)).

The State Street board has three times in recent years considered and rejected demands that the corporation sue various officers and directors on causes of action arising out of the foreign exchange trading and alleged misstatement of financial information. The only potentially significant development since the rejection of the Himmel demand was the denial of the motion to dismiss in Hill. That development does not have the significance the plaintiff would attribute to it. The claims in the Hill case against the directors who voted on the demand are that they are liable as signers of SEC filings by the corporation that allegedly contained misstatements of omissions. There is no claim in Hill that the directors themselves are primarily liable for any misstatement or omission. In fact, the Hill complaint specifically disclaims any allegations of fraud against the independent directors. It is hardly surprising (and thus not particularly significant) that where the motion judge found plausibly actionable claims of misstatement or omission by others to have been sufficiently pled, she left the Section 11 and 15 claims in the case as well. The fact the directors were defendants in Hill at the time they considered and rejected the plaintiff's litigation demand does not establish their lack of independence. See Seminaris v. Landa, 662 A.2d 1350, 1355 (Del. Ch. 1995) ("I cannot agree with plaintiff that the threat of liability in a related actions has a greater impact on the directors' discretion than the threat of liability in this derivative action. Plaintiff is merely uttering a slightly altered version of the discredited refrain – 'you can't expect the directors to sue themselves.'") (internal citations omitted).

I find that the defendants have sufficiently shown, *prima facie*, that the voting directors who rejected the plaintiff's demand were independent within the meaning of § 7.44.

Accordingly, it falls to the plaintiff to rebut that showing "with [factual] particularity." Mass. Gen. Laws ch. 156D, § 7.44(d). This the Fund has not done.

The Complaint, upon which the plaintiff relies for its rebuttal, does not set forth particularized allegations that support a conclusion that there is a "substantial likelihood" of liability on the part of the directors. "[T]o establish oversight liability a plaintiff must show that the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act. The test is rooted in concepts of bad faith; indeed, a showing of bad faith is a *necessary condition* to director oversight liability." In re Citigroup Inc. Shareholder Derivative Litigation, 964 A.2d 106, 123 (Del. Ch. 2009) (emphasis in original).

The plaintiff asserts that the directors face a substantial likelihood of liability with respect to the foreign exchange trading because the directors were aware of the alleged wrongdoing and "approved and oversaw an illicit business strategy that spanned a decade," (Pl.'s Opp'n to Defs.'s Mot. to Dismiss at 15 (dkt. no. 22)), and that "State Street's FX scheme thrived because of the Individual Defendants' blatant and utter failure to implement risk management policies and internal controls designed to prevent and uncover fraud." (Compl. at ¶ 81 (dkt. no. 1).) The complaint lacks particularized facts that would support these conclusory statements. Cf. Seminaris, 662 A.2d at 1355 (complaint that directors failed to supervise employees that merely alleged that the directors "looked the other way" was insufficient to show a substantial likelihood of liability).

The defendants have alternately moved under Rule 12(b)(6) to dismiss the complaint for failure state a claim upon which relief can be granted. In light of my disposition of the matter under the Massachusetts Business Corporation Act, I do not formally decide that question. I do

note, however, relative to the question whether the plaintiff has shown a particularized basis for finding a substantial likelihood of liability on the part of the directors, the following observation by the Supreme Court in Ashcroft v. Iqbal:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56). The plaintiff here may have made conclusory allegations that are "consistent with" liability on the part of the directors, but those allegations are well short of a showing of a substantial likelihood of liability that is necessary to rebut the directors' initial showing of independence.

B.   Good Faith and Reasonable Inquiry

When it is found that a majority of directors are independent, as here, the business judgment rule applies to the board's decision to reject the plaintiff's demand and the burden falls to the plaintiff to prove that the directors did not make their determination in good faith after a reasonable inquiry. M.G.L. ch. 156D, § 7.44 Cmt. 2; Pinchuck, 2011 WL 477315 at *14. See also Solomont & Sons Trust v. New England Theatres Operating Corp., 93 N.E.2d 241 (Mass. 1950). The plaintiffs have not met their burden of rebutting the business judgment rule.

The record demonstrates that the State Street board thoroughly investigated the Fund's demand as it had previously done regarding the Lazar and Himmel demands. Across the three demands, the committee met twenty two times, and independent counsel billed nearly 1,000 hours for investigating the demand and advising the committee. In response to the demands, the

committee conducted interviews, reviewed contracts, considered thousands of pages of documents, analyzed the investment portfolio, and investigated public disclosures. The committee also evaluated the legal theories that could possibly be pursued and the prospects of eventual recovery.

The plaintiff asserts that the inquiry was unreasonable because two of the committee members were named as defendants in the Hill action. The plaintiff further argues that the committee relied too heavily on investigative work previously performed by counsel for the defendants in the Hill case, Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale").

The special committee was first appointed in response to the July 2007 Lazar demand. The three members worked with Simpson Thacher on a five month investigation. It should be noted that the Hill case had not been brought at that time. When the Himmel demand was received in September 2010, it was not unreasonable to appoint the same committee. The members were familiar with the issues, and both economy and efficiency were served by appointing them to review the new, similar demand. There is nothing unreasonable about legitimate concern for economy and efficiency. Likewise, when the Fund's demand was received about a year later, it was again reasonable to appoint the same committee to avoid a waste of time and resources. As discussed above, the denial of the motion to dismiss in Hill was not a significant event affecting the independence of the director defendants.

As for reliance on work performed by WilmerHale as defense counsel in the Hill action, the plaintiff has not offered any evidence to show that Simpson Thacher and/or the committee were improperly affected by considering that work. The simple fact that information has been assembled and provided by an interested party does not mean it cannot be independently evaluated by a neutral party. After all, that is what happens when a court evaluates the parties'

submissions in considering a motion to dismiss. There is no indication that because WilmerHale provided information the committee did no independent evaluation of it. Rather, the Curin declaration states that the special committee "built on and evaluated the facts obtained by WilmerHale as part of our inquiry." (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 8 at 6 (dkt. no. 15-8).) The plaintiff has not shown that the investigation was inadequate or incomplete, not done in good faith, or that the conclusions, measured against the business judgment rule, were unreasonable.

### **III.** Conclusion

In sum, pursuant to § 7.44, I find that the directors were independent and acted in good faith after a reasonable inquiry when they rejected the plaintiff's litigation demand. That being so, the action must be dismissed.

The defendants' Motion to Dismiss (dkt. no. 14) is GRANTED. This action is DISMISSED pursuant to Mass. Gen. Laws ch. 156D, §7.44.

It is SO ORDERED.

                                              <u>George A. O'Toole, Jr.</u>
                                              United States District Judge